No. 12,933.

SUCCESSION OF WILLIAM PARHAM AND MARTHA RHODES, HIS WIFE.

SYLLABUS.

The terms of article one hundred and eighty-six of the Constitution of 1898 relate to the future, and their effect is prospective only; and they can not be given a retrospective operation, the result of which would be a remission of a large amount of delinquent taxes, in the absence of any provision clearly indicative of that purpose on the part of the framers of the organic law.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

*Fergus Kernan, E. Evariste Moise, John Wagner* and *Giunio F. Socola* for Plaintiff in Rule, Appellee.

*F. C. Zacharie* for State Tax Collector, Defendant in Rule, Appellant.

Argued and submitted February 23, 1899.
Opinion handed down March 20, 1899.
Rehearing Refused, with Reasons, May 15, 1899.

Succession of William Parham and Wife.

The opinion of the court was delivered by

WATKINS, J.   It appears from the record, that, notwithstanding the fact that William Parham departed this life in the city of New Orleans on the 26th of June, 1865, possessed of one horse, which was valued in the inventory *then* taken at $50.00, and a small lot of ground with the improvements thereon, valued at $1100.00, and that his surviving widow, Martha Parham, was qualified as the administratrix of his succession on the 17th of July, 1865, the public administrator opened his succession and that of his wife on the 17th of July, 1897— the latter having died on the 4th of November, 1874, after the lapse of a ten years' administration.

The conspicuous feature of the present administration is, that the horse described in the former inventory has disappeared, and the appraised value of the lot and improvements has been reduced to $50— same being the sole asset of the successions of the aforesaid deceased persons.

It further appears, that an order for the sale of said property was granted on the 9th of September, 1898, upon the representation of the public administrator, "that there are taxes and costs of administration due, and the only way to settle these successions is to cause the property to be sold."

A short while subsequently, the attorney for the public administrator, joined by other counsel, obtained a rule on the tax collector, to show cause why the assessments of taxes against the aforesaid property, as that of William Parham, for the years 1872, 1873, 1874, 1875, 1876, 1881, 1882, 1883, 1885, 1886, 1887, 1888, 1889; 1890, 1891, 1892, 1893, 1894, 1895 and 1896—a period of about twenty-five years— should not be declared null and void, on the ground that same were made against, and in the name of a dead person; and why, for the same reason, all the inscriptions of the tax liens, privileges and mortgages securing same should not be cancelled and erased.

Subsequently, the aforesaid rule was supplemented with pleas of prescription of three and five years, against "all taxes and tax inscriptions for the years 1890 to 1895, inclusive."

All these proceedings were taken antecedent to the adoption of the Constitution of 1898, but, immediately thereafter, the aforesaid rule was again supplemented by a statement to the effect "that all tax " liens, privileges, and mortgages against said property are prescribed

" by three years from the 31st day of December of each of said years," reiterating the other allegations of his previous rule.

The definite object of the last amendment was to enable the successions to avail of the possible benefit of the one hundred and sixty-eighth article of the Constitution of 1898, as a supposed constitutional remission of *all* taxes and the consequent release of all tax inscriptions antecedent to that limit.

That this seems to have been the appreciation of the district judge is evidenced by his decree which made the rule absolute to the extent of ordering the cancellation and erasure of all the tax inscriptions, liens and privileges and mortgages—for the various years enumerated from 1872 to 1890, inclusive; and all tax inscriptions of liens and privileges for the years 1891, 1892, 1893, and 1894, bearing upon or affecting said property.

It is from that judgment that the State tax collector has appealed; and in this court there has been no answer to the appeal filed, and no amendment thereof requested.

Upon this statement, it is evident, that this is a proceeding specially inaugurated for the purpose of disincumbering said succession property of its accumulated burden of taxes and tax encumbrances, so as to effectuate a sale by the public administrator; and whether the judgment appealed from shall eb sustained or not, exclusively depends upon what is the proper interpretation to be placed upon the aforesaid article of the Constitution.

This is conceded by the counsel for the public administrator, who make this statement in their brief, viz.:

."The question before the court is the construction of Article 186 of " the Constitution of 1898.

."It reads as follows:

" 'No mortgage or privilege on immovable property shall affect third " persons, unless recorded or registered in the parish where the pro-" perty is situated, in the manner and within the time as is now or " may be prescribed by law, except privileges for expenses of last ill-" ness and privileges for taxes, State, parish or municipal; provided, " such tax liens, mortgages, and privileges, shall lapse in three years " from the 31st day of December, in the year in which the taxes are " levied, *and whether now or hereafter recorded.'* "    Pp. 3 and 4.

The foregoing article is an exact reproduction of Article 176 of the Constitution of 1879, except the *proviso*, which reads as follows, viz.:

"Provided such privilege shall lapse in three years."

A comparison made of the two articles discloses, that the present article contains the following words, in addition to those contained in the former, viz.: "Tax liens and mortgages," and "from the 31st day of December, in the year in which the taxes are levied, and whether now or hereafter recorded."

The terms of the former article are broadened so as to cover and include tax *mortgages,* as well as *privileges,* and so as to fix a date from which the time within which they are to lapse shall be computed; and thereto is super-added the phrase "and whether now or hereafter recorded."

The question for consideration and decision is whether that article is to be given a retrospective signification and effect; or rather, to determine whether such was the purpose and intention of the framers of the organic law.

It is the general rule that a law can only prescribe for the future. R. C. C., 8.

It is generally understood to be a sound rule of construction never to consider a law as applicable to cases or questions arising before its passage, unless the legislature have, in express terms, declared such to be its intention.

In City vs. Vergnole, 33 Ann. 35, this question was discussed, and the court held, that article eight of the Civil Code, "merely dictates " an universal rule of construction, recognized in every known system " of jurisprudence."

A leading author on the question, puts the proposition thus:

"One of the cardinal rules by which courts are governed in inter-
" preting statutes is, they must be construed as prospective in every
" instance, except when the legislative intent that they shall act
" retrospectively is expressed in clear and unambiguous terms, or such
" intent is necessarily implied.     *     *     *     *     *     *

"Every reasonable doubt as to the intention of the law-maker is
" resolved *against* rather than in favor of the retrospective operation
" of the statute."     Wade on Retroactive Laws, Secs. 33, 34, 35.

The same rule of construction unquestionably prevails in regard to constitutional provisions as with regard to statutes.

On this subject the same author says:

"This principle is not only applicable to legislative acts, but to
" State Constitutions, and, in fine, to all written law. Being a rule

" of construction, it may be applied to every conceivable expression of " the will of the law-making power, where there is a doubt, whether " it was intended to take effect prospectively or retrospectively," etc. *Ibid.*

The same principle is announced by Sedgwick, *Vide* Con. Stat. and Const. Laws, p. 19.

Cooley on Taxation, p. 221.

"We shall venture, also, to express the opinion," says the same author, "that a *Constitution should operate prospectively only,* unless " the words employed show a clear intention that it should have a " retrospective effect." Cooley, Cons. Lim., p. 62. Story on Const. Sec. 454. Sayer vs. Wesner, 8 Wendell, 661. Price vs. Matt, 52 Penn., St. 315.

On the foregoing authorities, we are of opinion we can safely announce the governing rule to be that the terms of a constitutional article like the words of a statute should be considered as having a prospective effect only, unless they clearly exhibit the intention of their framers to have been that they should be given a retrospective effect.

In this discussion we do not propose to argue the question of the *power* of the convention to adopt an ordinance having a manifestly re-**troactive** effect. The power of a Constitutional Convention so to do, may, for the purposes of the present decision, be conceded.

The only language of the article which has been pointed out as justifying the retrospective operation of same is that of the last paragraph, viz.: "And whether now, or hereafter recorded."

In other words, the contention of the public administrator is, that by declaring that tax liens, privileges and mortgages securing the payment of taxes shall lapse in three years from the 31st day of December in the year in which such taxes are levied, "and whether now or hereafter recorded," the framers of the Constitution intended to release all property from their operation and effect, in any and all years preceding its adoption.

We are most certainly unwilling to adopt such an interpretation as that, unless our judgment is clearly convinced that the words of the Constitution imperatively require such a construction at our hands.

We know, as a fact, that the Constitutional Convention of 1879 pursued an exactly opposite course, and adopted an ordinance for the relief of delinquent tax-payers, for the express purpose of saving all

antecedent taxes from remission; and it is common knowledge, that no revenue law of the State has been enacted during many years past which contains a sweeping repeal of all previous revenue laws.

Consequently, in our opinion, such an interpretation of the aforesaid article, as is contended for by counsel of the public administrator, would be received as a surprise, and the result of such a construction would be little short of a public calamity; because of the vast amount of delinquent taxes which are covered by the aforesaid ordinance, and which have been, heretofore, held imprescriptable by many decisions of this court.

We have given this question most careful and serious consideration, and have reached a conclusion exactly opposite to that of our learned brother of the District Court.

Counsel for the State has reproduced and had incorporated into his brief the opinion of the Circuit Court of Appeals for the parish of Orleans in the case of State *ex rel* Hart vs. City of New Orleans, which involves the question we have under consideration, and the examination of which has afforded us pleasure and satisfaction, in that it perfectly accords with our views, and is both admirably and forcibly expressed.

We have, therefore, concluded to adopt the same and make it part of the opinion of this court.

It is as follows, in so far as it appertains to the question under consideration, viz.:

"We now pass to the consideration of the plea of prescription of " three years, under Article 186 of the Constitution of 1898. Article " 176 of the Constitution of 1879, reads as follows:

" 'No mortgage or privilege on immovable property shall affect third " persons, unless recorded or registered in the parish where the " property is situated, in the manner, and within the time as is now, " or may be, prescribed by law, except privileges for expenses of last " illness, and privileges for taxes, State, parish or municipal, provided " such privilege shall lapse in three years.' "

"In Davidson vs. Lindop, 36 Ann., 767, it was decided that the lim- " itation of three years only applied to special privileges named when " they are *unrecorded,* and the article meant that no unrecorded privi- " leges shall affect third persons, except the special ones mentioned, " which, though unrecorded, shall have effect, provided such unre- " corded privileges shall lapse in three years.

"Article 176, *supra*, was *ipsissimis verbis*, incorporated into Article
186 of the Constitution of 1898, and we must presume that it was
adopted with a knowledge of the judicial construction placed upon
the former, and such construction, consequently, attaches to the
latter.

"But Article 186 goes on to say; and here the difficulty arises—

"'From the 31st day of December in the year in which the taxes are
levied, and whether now or hereafter recorded.'"

"The relator urges that 'the tax liens, mortgages and privileges,
securing the city taxes of 1874, 1875, 1876, 1894, are prescribed
under the last quoted terms of the article.'"

"We may dispose of the discussion in the briefs as to the power of
a constitutional convention to pass a retroactive ordinance when it
does not impair the obligation of contracts, with the simple state-
ment that the affirmative of the proposition is beyond dispute.

"The present inquiry is not as to the *power*, but as to the *intention*
of the framers of the organic law.

"It is elementary that a constitutional enactment should be con-
strued to operate prospectively only, unless the language employed
manifests a clear intention to give it a retrospective effect.

"Do the words 'shall lapse in three years from the 31st of December
in the year in which the taxes are levied, and whether now or here-
after recorded,' clearly manifest an intention to sweepingly pre-
scribe all tax privileges which, by existing law and jurisprudence,
have heretofore been deemed imprescriptible?

"We think not.

"The language already cited as common to the analagous clauses of
both Constitutions, decree that there shall exist a privilege for
*unrecorded* taxes for three years. This would leave to legislative
discretion the right to fix any limit it might deem proper to the
prescription of *recorded* tax privileges.

"Since 1880 this limit has been variously fixed at three years by
most of the revenue acts, and five years by the Revenue Act of 1882.

"It was evidently the purpose of the Constitution to curtail the
power of the legislature in this respect, and to *permanently* fix in the
instrument itself and beyond reach of legislative uncertainty, the
prescriptive period of *recorded* tax privileges at three years.

"The same may be said as to the time from which prescription is to
run. There had been conflict of legislation on this point, some of

"the revenue acts providing that prescription ran from the filing of
"the tax roll, and one of them—that of 1888—and a special statute,
"Act 26 of 1886, fixing the date at December 31, of the year of the
"levy of the tax. It was, doubtless, to prevent similar conflict in the
"future that the date 'December 31st' was inserted in the organic
"law. It may be conceded that the words immediately following,
"to-wit: 'And whether now or hereafter recorded', are intended to
"have, and do have, a retroactive effect, but not to the extent and in
"the manner suggested by relator. At the time of the adoption of the
"Constitution, the term of prescription of the privileges securing the
"taxes of 1895, 1896 and 1897, had not expired; they were *then*
"recorded, or, in other words, within the meaning of the constitu-
"tional expression 'now recorded.' These words were intended to say
"that, as to those tax privileges, prescription should run, not from
"the filing of the tax roll, but from the 31st of December of the year
"in which the tax was levied, and that this should also apply to all tax
"privileges 'hereafter recorded.'

"We think that an analysis of the article, in connection with law
"and jurisprudence, as they stood at the time of its adoption, shows
"the intention of the Constitution to provide:

"First—That all privileges for taxes, whether recorded or unre-
"corded, shall lapse in three years, and that it shall not be competent
"for the legislature to extend this period of prescription.

"Second—That prescription shall run, not from the filing of the
"tax roll, but from the 31st of December of the year in which the tax
"is levied, as to all tax privileges hereafter recorded.

"Third—That, as to the tax privileges already recorded by the
"filing of the roll, prescription shall run, not from the filing of the
"tax roll, but from the 31st of December of the year in which the
"taxes were levied. See Revenue Acts of 1886 and 1888.

"The view we have expressed as to the intention of the Constitu-
"tion is confirmed by the fourth paragraph of Article 325 (schedule),
"to the effect that 'all fines, *taxes,* penalties, forfeitures and *rights*
"due, owing or accruing to the State of Louisiana, or to any parish,
"*city,* municipality, *board,* or other public corporation therein, under
"the Constitution and laws heretofore in force, * * * *shall con-*
"*tinue* and *remain unaffected* by the adoption of this Constitution.'

"This is so strongly illustrative of the purposes of the convention,
"that we do not deem it necessary to determine whether, in case of

" conflict, Article 325, the higher number and later in position, would
" not necessarily take precedence of Article 186.

"It has been aptly said, that a construction which raises. a conflict
" between parts of the Constitution is not permissible when, by any
" reasonable construction, the parts may be made to harmonize. An
" interpretation of the meaning of a particular clause based on all the
" provisions *in pari materia* of the instrument as a whole, should pre-
" vail when it alone can harmonize the apparent contradictions of an
" inartistic phraseology.

"It may be added that, while the argument, from inconvenience, can
" not properly be used by courts to avoid the effect of a plain declara-
" tion of a Constitution, yet it may be properly invoked as a guide for
" the ascertainment of intent where doubt may exist.

"Act 67 of 1884, Section 3, makes it the duty of the city to turn
" over to the Board of Liquidation of the City Debt, *all uncollected*
" *revenues of the city anterior to the year* 1879, when collected, to be
" applied to the payment of interest on and redemption of bonds
" issued for the retirement of the judgment debt arising from muni-
" cipal obligations, anterior to 1879.

"Pretermitting the question of the impairment of a contract, and
" assuming, as we must, that no State Constitution would deliberately
" violate the Federal limitation, we may view the matter as one of
" interpretation, and not of constitutionality.

"The convention can not be credited with the intention of destroy-
" ing the securities pledged sacredly by law to the payment of munici-
" pal creditors, in the face of the declaration of Article 325, that *no*
" *tax or right* due to any city or board shall be affected.   •

"Therefore it is ordered, adjudged and decreed, that the plea of
" prescription filed in this court be overruled, and that the judgment
" be and the same is hereby affirmed with costs."

Concurring in the foregoing opinion, the necessary result is, that
the judgment appealed from must be reversed, and one entered dis-
charging the rules taken in behalf of the successions of William and
Martha Parham.

It is therefore ordered, adjudged and decreed, that the judgment
appealed from be annulled and reversed; and it is further ordered and
decreed that the rules taken in behalf of the successions of William
and Martha Parham, deceased, for the cancellation and erasure of
inscriptions of certain tax liens, privileges and mortgages, against

succession property, be discharged and rejected at the cost of the plaintiff in rule.

### ON APPLICATION FOR REHEARING.

WATKINS, J.   This case was tried in the lower court exclusively upon the theory that the taxes and tax inscriptions under consideration had been remitted by the terms of the 186th Article of the Constitution of 1898, and, in the lower court, that theory was sustained, and the tax collector appealed.

That was the only question argued at bar, or in briefs by counsel on either side; and, therefore, it was the only question that could be tried and decided here.

The present application rests, exclusively, upon the theory that this court committed an error in not having passed the limits of the judgment appealed from, and the argument presented here, and examined and decided the case upon a question of prescription, resting for its solution upon various tax statutes, of date anterior to the Constitution, while admitting that it was the error of counsel in not having called the attention of the court thereto in argument or brief.

We must decline to entertain this view, or, now, investigate the case upon any such theory.

If this were permissible, there would be, practically, no end of litigation; there would never be any determination of a case.

Rehearing refused.

MR. JUSTICE MONROE takes no part, as this case was argued and submitted prior to his appointment to this bench.