This is a summary proceeding brought by the State of Louisiana for the purpose of collecting from Gentilly Route Sixty-one Company, Inc., franchise taxes claimed to be due for the years 1933 and 1934, with penalties, costs and attorneys' fees. The petition was filed on December 30th, 1941, and the defendant corporation has specially pleaded the prescription of three years as established by the constitutional amendment to Section 19 of Article XIX of the Constitution of 1921, which amendment, as Act 35 of 1938, was approved by the people of the State on November 8th, 1938. The plea of prescription was overruled and there was judgment against defendant corporation as prayed for and it has appealed.
Section 19 of Article XIX of the Constitution, as amended, reads as follows:
"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, except privileges for expenses of last illness, privileges arising upon the death of the owner of the property affected, and privileges for taxes, State, parish and municipal; provided such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are due, and whether such liens are now or hereafter recorded; and provided, further, that all taxes andlicenses, other than real property taxes, shall prescribe inthree years from the 31st day of December in the year in whichsuch taxes or licenses are due.
"Privileges on movable property shall exist without registration of same, except in such cases as may be prescribed by law." (The italicized portion represents the amendment.)
The Governor of Louisiana, on November 19th, 1938, issued his proclamation to the effect that the constitutional amendment proposed in the said statute had been approved by the people. Article XXI of the Constitution provides that when a constitutional amendment is approved by a vote of the people it "shall become a part of the Constitution, effective twenty days after issuance of the Governor's proclamation."
Accordingly, it is the contention of counsel for respondent corporation that the amendment became effective not later than December 10th, 1938, and that since more than three years elapsed between December 10th, 1938, and the day on which this proceeding was filed, to-wit: December 30th, 1941, the said prescription has accrued and the suit must be dismissed.
On the other hand it is the contention of counsel for the State that since prior to the adoption of the amendment there was no prescriptive period which could have barred the State's right to proceed to collect these franchise taxes, such taxes as became payable *Page 795 
prior to 1938 were "due" not only in the year in which they first matured but were equally "due" in each subsequent year, and that, therefore, since the amendment provided that the prescription should run "three years from the 31st day of December in the year in which such taxes or licenses are due" the prescription did not accrue until the expiration of three years from December 31st, 1938, that is, not until December 31st, 1941. To state it slightly differently, counsel for the State maintain that if a tax which is levied or first becomes payable in 1933 is not paid in that year, it remains "due" in the following year and in all subsequent years, and that, therefore, these franchise taxes for 1933 and for 1934 remained "due" in 1938, with the result that the prescription provided by the amendment did not accrue until three years after December 31st, 1938.
We are unable to so interpret the language of the amendment. When a statute or an amendment refers to a year in which taxes are due, we cannot believe that there is intended any other year than that in which the taxes were levied and would have been paid had payment been made as contemplated. It is true that the years in which it was contemplated that franchise taxes for 1933 and 1934 would be paid had both past long before the amendment was adopted, and that since in State of Louisiana v. Alden Mills,8 So.2d 98, decided by us on May 11th, 1942, we held that the amendment should not be given retrospective effect, we cannot hold that the three-year prescription began to run as to each of those franchise taxes on the 31st day of December in each of the respective years. But we do not think that it is to give retrospective effect to the amendment to hold that as to all taxes which had become due and owing in prior years the amendment should become effective, in accordance with the Constitution, twenty days after the Governor's proclamation instead of at the end of the year.
Counsel for the State rely upon certain language to be found in Succession of Parham, 51 La.Ann. 980, 25 So. 947, 950, 26 So. 700. There the court was confronted with the question of when prescription should commence to run under the provisions of a new Constitution which provided that "* * * such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are levied, and whether now or hereafter recorded." The court adopted the following language which had been used by the "Court of Appeal for the Parish of Orleans" in the case of State ex rel. Robert A. Hart v. City of New Orleans (51 La.Ann. 912, 25 So. 951) in which that court said:
"`We think that an analysis of the article[s], in connection with law and jurisprudence as they stood at the time of its adoption, shows the intention of the constitution to provide: * * *
"`That prescription shall run, not from the filing of the tax roll, but from the 31st of December of the year in which the tax is levied, as to all tax privileges hereafter recorded.'"
And "`That as to the tax privileges already recorded by the filing of the roll, prescription shall run, not from the filing of the tax roll, but from the 31st of December of the year in which the taxes were levied. * * *'"
The question there, however, was quite a different one. There were two possible dates from which it might have been held that the period of prescription should commence to run. On the one hand it might have commenced at the time of filing the tax roll, and on the other hand it might have been held that that period should commence to run on the 31st day of December of the year in which the tax was levied. So far as we can gather from the court's opinion, the date on which the new Constitution became effective was in no way involved. All that the court found presented was the question of whether the prescription should run from the date of the filing of the tax roll or from the 31st day of December in each year, and the court found that because of the wording of the enactment, the date should be the later one, the 31st day of December. But the proceeding to collect the said taxes was brought long before the expiration of three years from the effective date of the Constitution, and hence the question which confronts us was not before the court there.
Had the proceeding in the Parham case not been brought until more than three years after the effective date of the Constitution of 1898, then the question would have been the same.
The decision of the Supreme Court in Bostwick v. Thomson,149 La. 152, *Page 796 
88 So. 775, 777, is much closer to the point. Act 224 of 1908 became effective in Caddo Parish on August 6th, 1908. It amended Article382 of the Civil Code so as to provide that: "* * * whenever a minor emancipated by marriage shall reach the age of eighteen years the said minor shall be relieved from all the disabilities which attach to minors and with full power to do and perform all acts as fully as if the said minor had arrived at the age of twenty-one years."
The person involved was Mrs. Bostwick, who was born on August 24th, 1887, and was married on August 27th, 1903, when she was 16 years of age. The law then provided that a certain ten-year prescription which was invoked would not have commenced to run until August 24th, 1908, when she would have obtained her full majority. She became 18 on August 24th, 1905, three years before the adoption of the amendment, and it was contended that the prescription should commence to run from that time; in other words, that the amendment, though it was not passed until three years later, had completely emancipated her on her 18th birthday three years before. On the other hand it was argued on her behalf that the prescription did not commence to run until the day on which the amendment became effective, to-wit, August 6th, 1908. And the court so held. The court said that such legislation "* * * affects rights and persons already in existence from the time of the passage of the act, and is not confined merely to rights and persons coming under its terms in the future. * * *"
Thus, in the case at bar, the amendment provided a prescription of three years from the 31st of December in the year in which the tax is due. When it was adopted there were certain franchise taxes which were already more than three years overdue. It did not forgive or wipe out those taxes as we held in State of Louisiana v. Alden Mills, supra, but it did affect those taxes to this extent — that it gave the State a right, for three years, to proceed to collect them, and we think that that period of three years should commence to run from the effective date of the amendment; and we so hold. Consequently,
It is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and that this suit be now dismissed.
Reversed and dismissed.